UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| O'Neil Barclay, | : | |
| | : | |
| Petitioner, | : | |
| | : | Civil Action No. 03-5426 (WJM) |
| v. | : | |
| | : | **OPINION** |
| Roy Hendricks and Peter Harvey, | : | |
| | : | |
| Respondents. | : | |

O'Neil Barclay
New Jersey State Prison
#298925
P.O. Box 861
Trenton, NJ 08625

  *(Plaintiff, pro se)*

Nancy A. Hulett
Middlesex County Prosecutor's Office
25 Kirkpatrick Street, 3d floor
New Brunswick, NJ 08901

  *(Attorneys for Defendants)*


**WILLIAM J. MARTINI, U.S.D.J.**:

Petitioner O'Neil Barclay ("Barclay"), a prisoner currently confined at the New Jersey

State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For the reasons stated herein, the petition is **DENIED**.

I.  <u>BACKGROUND</u>

The facts of this case have been recounted in prior proceedings and this Court, affording

the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1),

will simply summarize the relevant facts as follows:[1]

Petitioner and the victim were coworkers who had a romantic relationship prior to the

incident upon which Petitioner's convictions are based.  On May 22, 1995, the evening of the

incident, another of the victim's coworkers, Paul Haun, told the victim that Petitioner was

looking for her and that he was agitated.  When she arrived home, the victim attempted to avoid a

confrontation by parking her car in the back lot of the apartment complex and running to her

apartment.  However, Petitioner intercepted her.  He threw her onto the stairs, called her obscene

names, slapped her, and threatened her with a knife.

As Petitioner attempted to pull the victim through the entrance to the apartment, Haun

stepped in between them.  Petitioner then struck the victim with the butt of the knife and punched

Haun in the face.  At this point, the victim was able to escape, run into her apartment and lock

the door.  However, while she was attempting to telephone for assistance, Petitioner dove

through her bedroom window with the knife in his hand.  He then dragged the victim out the

door of her apartment. The victim broke free again, but Petitioner caught her and punched her in

the eye, causing it to swell shut.  Petitioner then sexually assaulted the victim, ripping her clothes

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

off, and penetrating her both vaginally and anally with his fingers.  When she attempted to resist by digging her fingernails into his neck, he bit her left thigh.

Petitioner then dragged her away from the apartment holding the knife to her throat.  He told her not to scream or he would kill her.  Petitioner took the victim to a wooded area, where he forced her to perform fellatio on him.  He also ordered her to remove her remaining clothing.  When she refused, he stuck the knife into a tree directly over her head and removed them herself.  He then penetrated her both anally and vaginally.

When the two returned to the apartment complex, the police, responding to a call from the victim's coworkers concerning the assault, stopped and arrested Petitioner.  The victim told the police Petitioner had raped her.  She took the officers to the wooded area, where she showed them the tree with Petitioner's knife stuck in it and her panties.  The victim was later taken to a hospital, where the treating physician found swelling and bruising in her left eye, which was swollen shut, abrasions to her lower lip and knees, a bite mark on her left thigh, swelling to the left ear, slight redness in the vulva, hymen and external vagina, and redness on the neck, shoulder, upper back and right buttock.

After his arrest, Petitioner was given Miranda warnings, which he waived both orally and in writing.  Petitioner subsequently gave the police two transcribed oral statements concerning the incident.  The first was mostly exculpatory.  In that statement, Petitioner acknowledged forcibly entering the victim's apartment and admitted that he might have hit her, but claimed he did so unintentionally.  He also acknowledged that he possessed a knife, but claimed that after their initial violent confrontation, the victim had voluntarily agreed to leave the apartment with him and that all of their sexual activity that evening had been consensual.

Four hours later the police questioned Petitioner again and confronted him with inconsistencies between his story and what they had been told by the victim and Haun.  The police also informed Petitioner that they had discovered, contrary to his representations in the first interview, that he had an extensive criminal record.  At this time, Petitioner gave a transcribed oral statement which substantially agreed with the victim's description of the kidnapping and sexual assaults.

A week later, the investigating police officers brought both transcribed statements to Petitioner, asking him to review them, make any changes, initial each page and sign at the end.  Petitioner complied as to his first statement.  However, Petitioner refused to sign his second statement, saying "this make[s] me look like a motherfucking bad guy."  One of the police officers wrote Petitioner's remark on the unsigned second statement.

Plaintiff was convicted on June 6, 1997 on nine counts including second-degree burglary, first-degree kidnapping, three counts of first-degree aggravated sexual assault, third-degree terroristic threats, and third-degree possession of the weapon for unlawful purpose.  Petitioner received an aggregate prison term of fifty eight years and three months.  Petitioner's appeal of his conviction and sentence was upheld on November 1, 1999, with the exception that the Appellate Division merged his conviction for possession of a weapon with his conviction for making terroristic threats.  The New Jersey Supreme Court denied certification in May 2000.  Thereafter, Petitioner filed for post-conviction relief, which the Superior Court of New Jersey denied in November 2001.  The Appellate Division and Supreme Court both affirmed the denial.

Plaintiff now files this petition for habeas corpus alleging various evidentiary errors by the trial court, excessiveness in his sentence, a conviction against the weight of the evidence,

4

ineffective assistance of counsel both at trial and on appeal, and unconstitutional accumulation of

errors.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28

U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a
> district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not

issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies

a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor,* 529

U.S. 362, 405-06 (2000).  A state court decision "involve[s] an unreasonable application" of

federal law "if the state court identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.*

at 407.  It may involve an "unreasonable application" of federal law "if the state court either

unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply." *Id.*  To be an "unreasonable application" of clearly established federal law, the

state court's application must be objectively unreasonable. *Id.* at 409.  In determining whether

the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

court may consider the decisions of inferior federal courts. *Matteo v. Superintendent,* 171 F.3d

877, 890 (3d Cir. 1999).

## III.  ANALYSIS

Petitioner makes a number of claims for habeas relief, each of which this Court considers

in turn, but none of which have merit.

### A.      **Denial of Motion to Suppress Second Statement**

With respect to Petitioner's claim that the trial court erred in admitting the second of his

two statements, it has been held that federal courts must afford the states deference in their

determinations regarding evidence and procedure.  *See Crane v. Kentucky*, 476 U.S. 683, 690

(1986) ("we have never questioned the power of the States to exclude evidence through the

application of evidentiary rules that themselves serve the interests of fairness and reliability, even

if the defendant would prefer to see that evidence admitted").  It is well-established that "a state

court's misapplication of its own law does not generally raise a constitutional claim.  The federal

courts have no supervisory authority over state judicial proceedings and may intervene only to

correct wrongs of constitutional dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997)

(citations omitted).

In response to Petitioner's motion to suppress the second statement, the trial court held a

pre-trial evidentiary hearing.  Three police officers testified that Petitioner was given a Miranda

warning on three different occasions before he gave his first statement, and that Petitioner

knowingly and intelligently waived his rights.  Petitioner declined to testify.  The court found

that, because the Miranda warning need not be repeated at each successive interview, the failure

to re-administer the warning prior to the second interrogation did not affect the admissibility of

the statement.  The state courts, both on appeal and in post-conviction proceedings, affirmed this

ruling.  Petitioner has submitted no argument to suggest that the court's decision was contrary to

controlling legal precedent.  This Court can similarly find no error in the state court's ruling, and

given the Appellate Division's extensive discussion of the issue in its opinion dated November 1,

1999, this Court finds no need to elaborate in denying this claim.


**B.      Denial of Motion to Suppress Oral Statement**

Petitioner next argues that the trial court erred in admitting an oral statement that

Petitioner made to the police.  Upon reading his second sworn statement, in which he confessed

to beating and raping the victim, Petitioner exclaimed, "this makes me look like a motherfucking

bad guy," and refused to sign the statement.  The police wrote the statement down on the front of

the confession, and it was admitted into evidence during trial.  Petitioner argues, once again, that

the police had an obligation to re-administer the Miranda warning before presenting him with the

statement.  As the appellate court noted, however, "[t] he police are required to administer

Miranda warnings only when the person in custody is subject to interrogation or police conduct

or statements which are the 'functional equivalent' of interrogation." *State of New Jersey v.*

*O'Neil R. Barclay*, A-3574-97T4, at *9 (Sup. Ct. N.J. App. Div. November 1, 1999). Along

these lines, the trial court found that presenting to Petitioner a copy of his statement for his

signature was not the "functional equivalent" of interrogation, and that therefore, another

Miranda warning was not required. This Court, finding the rulings of the state courts free of

error, rejects Petitioner's second claim.


**C.       Denial of Motion to Present Evidence of Victim's Previous Sexual Conduct**

Petitioner next claims he should have been allowed to present evidence of his prior sexual

relationship with the victim, which he claims would have supported his defense that they had

consensual sex on the night of the incident. Petitioner argued before the trial court that his

relationship with the victim was characterized by episodes of arguing and violence followed by

intimate contact. Thus, he claimed it was not out of the ordinary for them to have a violent fight

and then proceed to have sexual relations, as on the night of May 22, 1995.

Under New Jersey's Rape Shield law, evidence of previous sexual conduct should be

admitted if the evidence's probative value outweighs its prejudicial effect. N.J.S.A. 2C:14-7; *see*

*also New Jersey v. Garron*, 827 A.2d 243, 258 (N.J. 2003). Although exclusion of relevant

evidence may result in a violation of the Sixth Amendment right to confront a witness, the right

"may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial

process," such as the interest in protecting a rape victim from unnecessary harassment and/or

preventing unnecessary prejudice caused by hauling out details of the victim's sexual past. *See*

*Michigan v. Lucas*, 500 U.S. 145, 149 (1991), (citing *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)).

 In response to Petitioner's motion, the trial court ruled that Petitioner should be allowed to present to the jury general evidence that he and the victim had lived together and had a tumultuous relationship.  With regard to more specific evidence showing that the two frequently engaged in physically violent arguments followed by sexual relations, the court ruled the evidence inadmissible.  It found that Petitioner failed to put forth evidence demonstrating that he and the victim engaged in physical violence "as part and parcel" of their sexual relations, and that the violence was intertwined with their sexual acts.  (Resp't Exh. 25.)  The court therefore found that Petitioner failed to present a sufficient nexus between their prior sexual history and the alleged kidnapping, beating, and assault the night of the arrest such that a reasonable jury could conclude that the victim had consented to sex that night.  However, the trial court denied Petitioner's motion without prejudice, and gave him an opportunity to submit an additional certification to show a closer connection between the two.  Petitioner declined to do so.

 As noted above, federal courts must afford the states deference in their determinations regarding evidence and procedure.  Here, the trial court gave due consideration to Petitioner's motion to present evidence of the victim's previous sexual conduct.  The court allowed Petitioner to present some evidence of the prior relationship and also gave him opportunities to demonstrate some sort of nexus between that relationship and the events that took place the night of the arrest.  Petitioner failed to do so.  The Court declines to second-guess the evidentiary ruling of the trial

court as well as the subsequent state court rulings affirming the trial court's decision.[2]  Based on

the facts described above, the Court finds that any error on the part of the trial court did not

amount to a constitutional violation.

### D.       Failure to Merge Counts

As to this claim, because the New Jersey Appellate Division merged the weapons-related

offense with the terroristic threats conviction, the Court finds the instant petition moot.[3]

### E.       Sentence Imposed Was Manifestly Excessive

Petitioner next argues that the trial court abused its discretion in imposing a sentence of

fifty-eight years and three months for his crimes.  Specifically, he claims the court should not

have imposed a period of parole ineligibility for his kidnapping and aggravated sexual assault

sentences, and that his sentences for burglary, aggravated sexual assault, false swearing, and

assault should run concurrently with his sentence for kidnapping.

With regard to the merits of Petitioner's application, a challenge to a state court's

discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a

federal constitutional limitation.  *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991); *Pringle v.*

---

[2] The state courts affirmed the trial court's ruling both on appeal and in post-conviction proceedings.

[3] The trial court instructed the jury that it had to find that Petitioner possessed the weapon alleged for the purpose of threatening or terrorizing the victim.  Because the Petitioner's only alleged purpose for possession of a weapon was to commit the substantive offense of terroristic threats, the Appellate Division held that the former should have been merged into the latter.  To this end, it vacated the conviction for possession of a weapon for an unlawful purpose.

*Court of Common Pleas,* 744 F.2d 297, 300 (3d Cir. 1984).  The Eighth Amendment prohibits

not only barbaric punishments, but also sentences that are disproportionate to the crime

committed, *Solem v. Helm*, 463 U.S. 277, 284 (1983).  Typically, federal courts regard sentences

within state legal guidelines presumptively constitutional.  *See White v. Keane*, 969 F.2d 1381,

1383 (2d Cir. 1992); *U.S. ex rel. Gardner v. Meyer*, 519 F. Supp. 75, 82 (D. Ill. 1981); *Johnson*

*v. Simpson*, 421 F. Supp. 333, 336 (D. Va. 1976).

      Based upon these standards, and given the number and shockingly violent nature of

Petitioner's crimes, the Court finds that any sentencing error that may have occurred is a matter

of state law and does not rise to a level of disproportionality prohibited by the Eighth

Amendment.  Because the Court finds no constitutional violation, this claim must be denied.


      **F.**      **Ineffective Assistance of Counsel**

      The standard for reviewing a claim of ineffective assistance of counsel is set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984).  The defendant must first show that counsel's

performance was deficient, which requires a showing that counsel made errors so serious that

counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id.* at 687.

The defendant must then show that the deficient performance prejudiced his defense, which

requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*Id.*  In essence, "the defendant must show that counsel's representation fell below an objective

standard of reasonableness" meaning "reasonableness under prevailing professional norms."  *Id.*

at 688.  This Court's evaluation of counsel's performance is "highly deferential," as a reviewing

court must make "every effort to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *Id.* at 689.

Petitioner's arguments that his counsel was ineffective in violation of the Sixth

Amendment are without merit.  Petitioner claims that his counsel at trial erred in insisting on

presenting a consent defense.  He maintains his counsel should have argued that Petitioner

simply did not have sex with the victim on the night of the incident.  However, the facts show

that in his first and second statements given to the police, Petitioner in fact stated that he and the

victim had had sex that night.  Medical evidence from that night also showed redness around the

victim's vaginal area.  Moreover, Petitioner himself now argues that the trial court should have

admitted evidence of his prior sexual relationship with the victim so as to support the defense of

consent.  Given these facts, the Court cannot agree that defense counsel erred in adopting a

consent defense at trial.

Similarly, the Court finds Petitioner had adequate representation during the appeal of his

conviction and sentence.  On appeal, defense counsel re-raised the issues regarding the

admissibility of Petitioner's second statement and oral statement to the police, as well as the

issue of the victim's previous sexual conduct.  Further, defense counsel successfully moved to

have the conviction for possession of a weapon for an unlawful purpose merged into the

substantive offense of making terroristic threats, which in turn led to a reduction in Petitioner's

sentence.  Accordingly, the Court finds Petitioner's argument as to this claim also without merit.

### G.  Convictions Were Against the Weight of the Evidence

Petitioner next argues that his convictions for possession of a weapon for an unlawful

purpose, kidnapping, and aggravated sexual assault were against the weight of the evidence.

Because the New Jersey Appellate Division vacated the conviction for possession, the Court does

not consider Petitioner's claim as to this offense.  With regard to the remaining convictions, the

Court first notes that, while a challenge to the sufficiency of evidence is cognizable on habeas

corpus review, a challenge to the weight of evidence generally is not.  *See Jackson v. Virginia*,

443 U.S. 307, 321 (1979); *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.).  Federal courts

considering a habeas petition will "consider state findings of fact presumptively correct, and will

not set aside the conviction unless the petitioner demonstrates by convincing evidence that the

factual findings are incorrect."  *Burke v.  Beyer*, No. 93-2492, 1994 WL 386383, *3 (D.N.J. July

21, 1994).

With regard to the kidnapping charge, Petitioner argues that he did not kidnap the victim

but that the two decided to take a walk together.  With regard to the aggravated sexual assaults,

Petitioner argues that the medical evidence did not prove the allegations of assault.  After

reviewing the evidence, the Court concludes that Petitioner has not met his burden of proffering

convincing evidence that the factual findings are incorrect.  First, with regard to the conviction

for kidnapping, Petitioner ignores the fact that he confessed to the charge in his second statement

to the police, and that the victim's and other witnesses' testimony was consistent with the

conviction.[4]  Second, with regard to the sexual assaults, Petitioner again fails to mention that he

confessed to the crimes and that the victim's testimony was consistent with the convictions.

---

[4] Haun and another apartment complex tenant testified as to what they witnessed, which
included Petitioner threatening, dragging, and beating the victim.

Further, although the medical evidence may not have affirmatively proven that the assaults took place, they were also not inconsistent with them.  For these reasons, the Court denies Petitioner habeas relief on this ground.

### H.  The Accumulation of Errors Requires A New Trial

Since the Court finds no cognizable errors of constitutional dimension in any of the prior proceedings relating to Petitioner's conviction and sentence, Petitioner's argument that the accumulation of errors requires a new trial is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Petition must be DENIED.  Further, the Petitioner having failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue under 28 U.S.C. § 2253(c)(2).

An appropriate order follows.


s/William J. Martini
**William J. Martini**

14